UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN FLOURNEY, CDCR #F-25814,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>FORMER CDCR SECRETARY DIAZ, FORMER WARDEN POLLARD and CORRECTIONAL OFFICERS KILOUGH, MIRANDA, KIES AND MOSELY,<br><br>　　　　　　　　　　Defendants. | Case No.: 3:21-cv-01767-RBM-BGS<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS;**<br><br>**(2) DISMISSING DEFENDANTS DIAZ, KILOUGH, MIRANDA, AND MOSELY FROM THE FIRST AMENDED COMPLAINT PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b); and**<br><br>**(3) DIRECTING U.S. MARSHAL TO EFFECT SERVICE OF FIRST AMENDED COMPLAINT AND SUMMONS ON DEFENDANTS POLLARD AND KIES PURSUANT TO 28 U.S.C. § 1915(d) & Fed. R. Civ. P. 4(c)(3).** |

　　On November 12, 2021, Plaintiff Benjamin Flourney ("Plaintiff"), a state inmate incarcerated at Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, proceeding pro se, filed a Complaint pursuant to 42 U.S.C. § 1983 accompanied by a

motion to proceed in forma pauperis ("IFP"). (Docs. 2, 7.) On January 27, 2022, the Court denied Plaintiff's request to proceed IFP because it appeared he was financially able to pay the civil filing fee. (Doc. 22.) The Court also screened the Complaint pursuant to 28 U.S.C. § 1915A and dismissed it for failure to state a claim. (*Id*.) Following an extension of time, Plaintiff has now filed a renewed motion to proceed IFP and a First Amended Complaint ("FAC"). (Docs. 15, 16.)

## I. Motion to Proceed IFP

All parties instituting any civil action, suit, or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if they are granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007) ("28 U.S.C. § 1915(a) allows the district court to waive the fee, for most individuals unable to afford it, by granting IFP status.").

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1) & (4). The institution collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which the account

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020). The additional $52 administrative fee does not apply to persons granted leave to proceed IFP. *Id*.

exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2). Plaintiff remains obligated to pay the entire fee in monthly installments regardless of whether the action is ultimately dismissed. *Bruce v. Samuels*, 577 U.S. 82, 84 (2016).

Plaintiff's initial IFP motion showed that on October 15, 2021, he had average monthly deposits of $533.33 in his trust account and carried an average monthly balance of $1,561.38 over the 6-months prior to initiating this suit, and had an available balance of $423.88 to his credit at the time of filing. (Doc. 6 at 1.) The partial filing fee would have been $106.67, but because Plaintiff's documents did not demonstrate he was "unable to pay" the $402 civil filing fee, the Court denied his IFP motion. (Doc. 11 at 3–4.)

In support of his renewed IFP Motion, Plaintiff has submitted copies of his CDCR Inmate Statement Reports for the past six months. (Doc. 16 at 3–8.) The most recent of these documents indicate Plaintiff now has an available balance of $0.20 in his inmate trust account. (*Id*. at 8.) Whether an affiant has satisfied Section 1915(a) falls within "the reviewing court[']s] . . . sound discretion." *California Men's Colony v. Rowland*, 939 F.2d 854, 858 (9th Cir. 1991), *rev'd on other grounds*, 506 U.S. 194 (1993).

Plaintiff's Motion to Proceed IFP is **GRANTED**. Because the initial partial filing fee exceeds the amount in Plaintiff's account, the Court imposes no initial partial filing fee. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee"); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered.").

II.  Screening Pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)

A.  Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his FAC requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). The Court must *sua sponte*

dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### B. Allegations in the FAC

In the sole ground of the FAC, Plaintiff claims the Defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment when they failed to protect him from contracting the Covid-19 virus. (Doc. 15 at 5.) He alleges that beginning in October 2020, half of the prison officials at RJD were not enforcing mandatory medical guidelines which required wearing N95 masks, nor forcing inmates to wear masks, socially distance, or clean doorknobs, telephones, and sink handles. (*Id*.) When the first positive

Covid test results began to appear in the beginning of December 2020, prison staff refused to send inmates who tested positive out of building 13 where Plaintiff was housed. (*Id*.) Plaintiff informed several officers about the situation, but they did nothing. (*Id*.)

By December 12, 2020, prison staff began moving infected inmates to another yard, but by then the virus had spread to inmates in building 13 on C-yard. (*Id*.) For nearly the entire month of December 2020 prison staff allowed infected inmates to comingle with uninfected inmates without requiring the mandated cleaning protocols to be enforced, resulting in approximately 1,000 inmates on C-yard becoming infected with the virus, including Plaintiff. (*Id*. at 5–6.)

Plaintiff states: "Besides holding the officers who work on morning and evening throughout Dec 1st-25 at fault, I also hold the Sergeant, Liutenant [sic], Captain, Warden at fault because I talk to the Sergeant in charge of 13 building throughout December. His response was that he couldn't do nothing to fix the problem." (*Id*. at 6.) He also states: "Based on the above I hold all officers who work in the Month of December liable for me contracting the Covid-19 virus on 12-11-20, see (Exhibit C), all officers who work the morning and evening shifts (Doe #1 to Doe 15) and 15 officers whose names will be disclose[d] once I'm in discovery proceedings." (*Id*. at 7–8.) Plaintiff states "officers, sergeants, liutenants [sic], captain, warden all knew that they had to isulate [sic] inmates who show symptoms of Covid-19, tested positive, or have close contact with known or suspected Covid-19 cases," and that they all had personal knowledge that inmates on his yard tested positive on December 1, 2020. (*Id*. at 8.) He further states: "I want to hold liable the warden or captain that could have been the ones who gave the order for no officer to follow the guideline rules that would have prevented the spread." (*Id*. at 9.)

Plaintiff names as Defendants M. Pollard, the Warden of RJD at the time of the events alleged in the FAC, RJD Correctional Officers Kies, Kilough and Lieutenant Miranda, Ralph Diaz, the Secretary of the California Department of Corrections and Rehabilitation ("CDCR") at the time of the events alleged in the FAC, and the RJD Associate Director of Appeals Howard Mosely. (*Id*. at 11–16.)

### C.     Discussion

"A prison official cannot be found liable under the Cruel and Unusual Punishment Clause [of the Eighth Amendment] for denying an inmate humane conditions of confinement 'unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  However, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

The Court acknowledges Covid-19 poses a substantial risk of serious harm. *See Plata v. Newsom*, 445 F.Supp.3d 557, 559 (N.D. Cal. Apr. 17, 2020) ("[N]o one questions that [Covid-19] poses a substantial risk of serious harm" to prisoners).  In situations such as this where the challenged "conduct is harmful enough to satisfy the objective component of an Eighth Amendment claim, whether it can be characterized as 'wanton' depends upon the constraints facing *the official*." *Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (citation omitted) (emphasis in original).  Because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege deliberate indifference to his serious medical needs.  It is *only* such indifference that can violate the Eighth Amendment; allegations of inadvertent failure to provided adequate medical care, or of [negligence], simply fail to establish the requisite culpable state of mind." *Id*. at 297 (internal quotation marks and citations omitted)

Here, Plaintiff contends he is 60 years old and suffers from high blood pressure which places him at a heightened risk of death from exposure to the Covid-19 virus. (Doc. 15 at 11.)  Plaintiff alleges he wrote to Defendant former CDCR Secretary Diaz around July 11, 2020, complaining that RJD prison officials were not wearing masks or enforcing Covid protocols, and Defendant Diaz forwarded the letter to RJD Warden Pollard "to fix the problem," but Pollard "didn't fix nothing." (*Id*. at 11.)  Defendant Pollard wrote to

Plaintiff on November 29, 2020, informing Plaintiff as to "how the CDCR was taking steps to prevent Covid-19." (*Id*.)  However, Pollard "never stated that he was going to fix the staff misconduct that is happening in C-yard" where Plaintiff was housed. (*Id*.)  Plaintiff states that he twice met with Pollard on C-yard and told him on both occasions that he was over 60 years old and suffers from high blood pressure which might cause him to die were he to be infected with Covid, and "told him that none of his officers are wearing masks because they say [it] is a protest.  That none of the officers do or enforce anything." (*Id*.)  Plaintiff alleges Pollard observed his officers not wearing masks or following or enforcing the mandated Covid protection protocols. (*Id*. at 11–12.)  These allegations are sufficient to survive the "low threshold" for proceeding past the *sua sponte* screening required by 28 U.S.C. § 1915A(b) with respect to an Eighth Amendment deliberate indifference claim against Defendant Pollard because they plausibly allege Pollard knew of and failed to respond reasonably to a substantial threat to Plaintiff's health. *See Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678.

Plaintiff alleges Defendant RJD Correctional Officer Kies worked in building 13 where Plaintiff was housed during the entire month of December 2020 and did not wear a mask or enforce Covid safety protocols during that time.  (Doc. 15 at 12.)  Plaintiff states that he told Kies that he was required to do those things and that Plaintiff was a Covid-vulnerable inmate. (*Id*.)  Plaintiff alleges Kies allowed infected inmates to pass out food trays and told Plaintiff "that his higher ups (Captain, Lieutenant, Warden) allowed him to have infected inmates pass out trays to non-infected inmates in cells." (*Id*. at 13.)  Kies allegedly said: "The sooner all inmates get infected the faster all this pandemic bullshit will go away, and whoever dies it [sic] dies." (*Id*.)  Plaintiff has plausibly alleged Defendant Kies knew of and deliberately disregarded a substantial risk to his health and safety and failed to respond reasonably to that risk sufficient to survive the "low threshold" for proceeding past the *sua sponte* screening required by 28 U.S.C. § 1915A(b) with an Eighth Amendment deliberate indifference claim.  *See Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1123.

Accordingly, Plaintiff is entitled to have the U.S. Marshal effect service of the summons and FAC on his behalf against Defendants Pollard and Kies. *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); FED. R. CIV. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal . . . if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.") Nevertheless, the Court cautions Plaintiff that the *sua sponte* screening process is "cumulative of, not a substitute for, any subsequent [motion to dismiss] that the defendant[s] may choose to bring." *Teahan v. Wilhelm*, 481 F.Supp.2d 1115, 1119 (S.D. Cal. 2007). Plaintiff has not, however, stated a claim against any remaining Defendant.

Plaintiff alleges he informed Defendant RJD Lieutenant Miranda that the actions of Defendant Kies were placing Plaintiff in danger of being infected with the Covid virus and explained how he was vulnerable due to his age and high blood pressure. (Doc. 15 at 13.) Plaintiff alleges Defendant Miranda replied that "he knows but he aint doing nothing because he aint going to go against what his buddies are doing. And he aint going to get in the middle of whatever Kies' issue is." (*Id*. at 13–14.)

The Court informed Plaintiff in its prior Order dismissing his original Complaint that in order to state an Eighth Amendment claim he was required to allege facts which plausibly show each individual Defendant was personally involved in the alleged constitutional violation. (Doc. 11 at 6–7.) He was instructed that his allegations the Captains, Sergeants, Lieutenants and Wardens were liable because they did "nothing to fix the problem" were insufficient to state an Eighth Amendment claim. (*Id*. at 7) (citing *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009) ("[T]here is no respondeat superior liability under § 1983")); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983"); *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (a prisoner must allege "(1) that the specific prison official, in acting or failing

to act, was deliberately indifferent to the mandates of the eighth amendment and (2) that this indifference was the actual and proximate cause of the deprivation of the inmates' eighth amendment right to be free from cruel and unusual punishment.")).  Rather, supervisors may only be held liable if they were "personally involved in the constitutional violation of a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Lemire v. Cal. Dept. of Corrections & Rehabilitation*, 726 F.3d 1062, 1074-75 (9th Cir. 2013); *see also Rizzo v. Goode*, 423 U.S. 362, 371 (1976) (a plaintiff must prove an affirmative link between an injury and a defendant's conduct).

  Plaintiff, in his FAC, once again seeks to hold a prison official, in this case Defendant Miranda, liable simply because Plaintiff told him that other prison officials were not enforcing Covid protection protocols, but without any factual allegations that Miranda had the authority or ability to require the protocols to be enforced, any personal participation in the lack of enforcement, or any causal link to Plaintiff's injury. *See Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019) (finding that defendant who had no discretion or authority relating to the alleged conduct could not be held liable under the Eighth Amendment because "[a]n official is liable under § 1983 only if 'culpable action, or inaction, is directly attributed to them.'") (quoting *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011)); *see also May v. Williams*, 10cv576-GMN-LRL, 2012 WL 1155390, at *3 (D. Nev. Apr. 4, 2012) ("Holding a prison official personally responsible for damages simply because he is familiar with a prisoner's circumstances through direct communications with the prisoner and through communications with his subordinates is such a broad theory of liability that it is inconsistent with the personal responsibility requirement for assessing damages against public officials in a 42 U.S.C. § 1983 suit."). The Eighth Amendment claim against Defendant Miranda is dismissed *sua sponte* for failing to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

  Plaintiff alleges that between October and December 2020, he told Defendant RJD Correctional Officer Kilough ten times that she needed to wear a mask and enforce Covid

safety protocols. (Doc. 15 at 14.) He also told her that inmates were not wearing masks, socially distancing or disinfecting surfaces. (*Id*.) When Plaintiff asked Kilough if she was "going to do something about it she said no." (*Id*.) Plaintiff alleges he told Kilough that he sufferers from high blood pressure and was 60 years old and therefore statistically vulnerable to death from the Covid virus but "she said she didn't care." (*Id*.) These allegations fail to state an Eighth Amendment claim against Defendant Kilough for the same reasons the allegations against Defendant Miranda fail to state a claim, because there are no factual allegations either Defendant had the authority or ability to require the protocols to be enforced or which plausibly allege an affirmative link between Plaintiff's injury and Defendant's conduct. Accordingly, Plaintiff's Eighth Amendment claim against Defendant Kilough is dismissed *sua sponte* for failing to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

Plaintiff alleges he wrote a letter to Defendant former CDCR Secretary Ralph Diaz on July 11, 2020, which "contained sufficient information to put him at notice that not only the officers but higher ups such as the Warden were violating my rights by putting me and all other inmates' life at risk. I let him know no one is following the Covid-19 guidelines put in place." (Doc. 15 at 15.) Plaintiff alleges Diaz sent his letter to Defendant Warden Pollard to address, but Pollard "ignored my claim and only wrote what the policy says to follow, he never admitted that he was fixing the issue I was raising." (*Id*.) He argues supervisory liability can be shown where the supervisor, in this case Diaz, was aware of the constitutional violation of his subordinates and failed to act. (*Id*.)

Plaintiff was previously informed that his allegations that supervisory officials failed to act to prevent the spread of Covid virus in the prison were insufficient to state an Eighth Amendment claim. (Doc. 11 at 8–9 ) (citing *Booth v. Newsom*, No. 20cv1562 AC P, 2020 WL 6741730, at *2-3 (E.D. Cal. Nov. 17, 2020) (sua sponte dismissing Eighth Amendment claims against the Governor for "failing to provide adequate means for prisoners to reduce their exposure to COVID-19"), *Blackwell v. Covello*, No. 20cv1755 DB P, 2021 WL 915670, at *3 (E.D. Cal. Mar. 10, 2021) (generalized allegations that warden had not done

enough to control the spread of Covid-19 in the prison failed to state an Eighth Amendment claim), and *Benitez v. Sierra Conservation Ctr., Warden*, No. 21cv0370-BAM PC, 2021 WL 4077960, at *5 (E.D. Cal. Sept. 8, 2021) ("In order to state a cognizable Eighth Amendment claim against the warden and the Health Executive Officer, Plaintiff must provide more than generalized allegations that the warden and the Health Executive Officer have not done enough regarding control the spread [of Covid-19]."), *report and recommendation adopted*, 2021 WL 4593841 (E.D. Cal. Oct. 6, 2021)). Plaintiff's allegation that he notified Defendant Diaz that Covid safety protocols were not being enforced at RJD and Diaz forwarded that complaint to the Warden of RJD to address the issue, but without allegations Diaz was aware the issue was not thereafter being addressed at RJD, does not plausibly allege Diaz knew of and deliberately disregarded a substantial risk to Plaintiff's health and safety or failed to act reasonably in response to that knowledge. Accordingly, Plaintiff's Eighth Amendment claim against Defendant Diaz is dismissed *sua sponte* for failing to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

Finally, Plaintiff alleges Defendant Mosely, the Associate Director of Appeals at RJD, became aware, through a letter Plaintiff sent him and through Plaintiff's inmate grievances, of his concerns regarding the safety of inmates at RJD. (Doc. 15 at 16.) Plaintiff alleges Mosely "had authority to overturn previous denials of lower prison officials' decisions and he didn't. He had authority to correct the unconstitutional violation that was occurring in C-yard where officers were putting my life at risk by not enforcing or doing what it [sic] supposed to regarding the Covid-19 rules." (*Id*.) These allegations suffer from the same defect as the allegations against Defendants Miranda and Kilough, that Mosely was informed that other prison officials were not enforcing Covid protection protocols without *factual* allegations that Mosely had the authority or ability to require the protocols to be enforced, as opposed to mere conclusory allegations to that effect, or which plausibly allege an affirmative link between Plaintiff's injury and Mosely's conduct. *See Hines*, 914 F.3d at 1236 (finding that defendant who had no discretion or authority relating

to the alleged conduct could not be held liable under the Eighth Amendment because "[a]n official is liable under § 1983 only if 'culpable action, or inaction, is directly attributed to them.'") (quoting *Starr*, 652 F.3d at 1205); *see also e.g. May*, 2012 WL 1155390, at *3 ("Holding a prison official personally responsible for damages simply because he is familiar with a prisoner's circumstances through direct communications with the prisoner and through communications with his subordinates is such a broad theory of liability that it is inconsistent with the personal responsibility requirement for assessing damages against public officials in a 42 U.S.C. § 1983 suit."). Plaintiff's Eighth Amendment claim against Defendant Mosely is dismissed *sua sponte* for failing to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

Because Plaintiff was notified in the Court's prior Order of dismissal of the same defects of pleading now contained in the FAC with respect to Defendants Diaz, Kilough, Miranda and Mosely, and because it is now clear he is unable to cure those pleading defects, these Defendants are dismissed from this action without further leave to amend. *See Lucas v. Department of Corrections*, 66 F.3d 245, 249 (9th Cir. 1995) ("[A] pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of an action.")

### III. Conclusion and Orders

Accordingly, good cause appearing, the Court:

1) **GRANTS** Plaintiff's Motion to Proceed IFP (Doc. 16).

2) **DIRECTS** the Secretary of the CDCR, or her designee, to collect from Plaintiff's prison trust account the $350 filing fee owed in this case by garnishing monthly payments from her account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2).

3) **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on Kathleen Allison, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California, 94283-0001.

    4) **DISMISSES** Defendants Diaz, Miranda, Kilough and Mosely from the First Amended Complaint sua sponte without further leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b) for failure to state a claim upon which relief may be granted.

    5) **DIRECTS** the Clerk to issue a summons as to Plaintiff's First Amended Complaint (Doc. 15) for Defendants Pollard and Kies and forward it to Plaintiff along with a blank U.S. Marshal Form 285 for each of these Defendants. The Clerk will provide Plaintiff with certified copies of his First Amended Complaint and the summons so that he may serve Defendants. Upon receipt of this "In Forma Pauperis Package," Plaintiff must complete the USM Form 285 as completely and accurately as possible, *include an address where Defendants may be found and/or subject to service* pursuant to S.D. Cal. CivLR 4.1(c), and return the forms to the United States Marshal according to the instructions the Clerk provides in the letter accompanying the In Forma Pauperis Package.

    6) **ORDERS** the U.S. Marshal to serve a copy of the First Amended Complaint and summons upon Defendants Pollard and Kies as directed by Plaintiff on the USM Form 285 provided to him. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

    7) **ORDERS** Defendants, once served, to reply to Plaintiff's First Amended Complaint and any subsequent pleading Plaintiff files in this matter in which Defendants are named as a party within the time provided by the applicable provisions of Federal Rules of Civil Procedure 12(a) and 15(a)(3). *See* 42 U.S.C. § 1997e(g)(2) (while Defendants may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening Defendants are required to respond).

    8) **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendants, or if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk, a certificate stating the manner in which

a true and correct copy of that document has been served on Defendants or their counsel, and the date of that service. *See* S.D. Cal. CivLR 5.2. Any document received by the Court which has not been properly filed with the Clerk or which fails to include a Certificate of Service upon a Defendant, or their counsel, may be disregarded.

**IT IS SO ORDERED**.

Dated: September 27, 2022

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE